MATTHEW D. METZGER (SBN 240437)
mmetzger@belvederelegal.com
BELVEDERE LEGAL, PC
1777 Borel Place, Suite 314
San Mateo, CA 94402
Telephone   (415) 513-5980
Facsimile   (415) 513-5985

*Attorneys for Debtor*

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISON

| | |
|---|---|
| In re | ) Case No. 14-31867 DM 11 |
| | ) |
| BRUGNARA PROPERTIES VI, a | ) Chapter 11 |
| California corporation; | ) |
| | ) |
| Debtor(s). | ) |
| | ) |
| Tax ID:  EIN: XX-XX3281 | ) |
| | ) |
| | ) Date:    July 17, 2015 |
| | ) Time:    1:30 p.m. |
| | ) Place:   235 Pine St., 22nd Floor |
| | )            San Francisco, California |
| | ) Judge:   Honorable Dennis Montali |
| | ) |
| | ) |

## SECOND SUPPLEMENTAL DECLARATION OF KATHERINE BRUGNARA IN SUPPORT OF MOTION TO DISMISS CASE

I, Katherine Brugnara, declare as follows:

1.      I am the President of the above-captioned Debtor and Debtor-In-Possession. I make this Second Supplemental Declaration in Support of the Debtor's Motion to Dismiss Case (the "Motion").  Specifically, I file this second supplemental declaration to respond to the observations

-1-

Case: 14-31867   Doc# 85   Filed: 07/16/15   Entered: 07/16/15 23:56:54   Page 1 of 24

made by the Court at the July 15, 2015 hearing. I have personal knowledge of the matters stated herein and if called as a witness, I could and would competently testify to the following.

2. Attached as Exhibit A are true and correct copies of: 1) "Note Secured by a Deed of Trust"; 2) "Addendum" and 3) "Deed of Trust" (collectively the "Loan Documents"), which Loan Documents I received from Dakota Note, LLC ("Dakota Note" and/or "Borrower") and promptly signed.

3. Per the "Addendum" enclosed within the Exhibit A, Dakota Note will wire the second and final installment of $900,000.00 dollars no later than 60 days within the close of escrow on the first installment of $1,200,000.00.

4. Attached as Exhibit B is a true and correct copy of the Mortgage Loan Disclosure Statement/Good Faith Estimate related to the same transaction, which document I also received from Dakota Note.

**Scheduled Disbursement of Loan Proceeds Demonstrates that Dismissal Is in the Best Interests of Creditors as all Creditors Will Be Made Whole**

5. I agree to disburse funds from the loan pursuant to the schedule identified under Good Faith Estimate of Closing Costs in Exhibit B and the table in paragraph 6, *infra*.

6. Specifically, I agree to disburse the funds out of escrow as follows:

| First Installment | Amount | Frequency | | $1,200,000 |
|---|---|---|---|---|
| | | | | |
| Wells Fargo | $430,000 | 1 | | $430,000 |
| Wells Fargo | $27,000 | 2 | | $54,000 |
| Saxe | $260,000[1] | 1 | | $260,000 |
| Saxe | $17,000 | 2 | | $68,000 |
| Dakota Note | $16,000 | 2 | | $64,000 |
| | | | | |

---

[1] The First Amended Supplemental Declaration of Katherine Brugnara inadvertently referenced a figure of "$360,000". Said reference was in error as the actual reinstatement quote received from Saxe was for approximately $260,000.00 *Compare* ECF/Docket No. 76 *with* ECF/Docket No. 76, Exh. C (actual Saxe Reinstatement Quote)

-2-

Case No. 14-31867 DM 11, *In re Brugnara Properties VI*
SECOND SUPPLEMENTAL DECLARATION OF KATHERINE BRUGNARA
IN SUPPORT OF MOTION TO DISMISS CASE

Case: 14-31867   Doc# 85   Filed: 07/16/15   Entered: 07/16/15 23:56:54   Page 2 of 24

| | | | |
|---|---|---|---|
| | Subtotal | | $876,000 |
| | | | |
| | **Balance Remaining** | | **$324,000** |
| **Second Installment** | **Amount** | **Frequency** | **$900,000** |
| | | | |
| Wells Fargo | $27,000 | 10 | $270,000 |
| Saxe | $17,000 | 4 | $68,000 |
| Dakota Note | $16,000 | 4 | $64,000 |
| | | | |
| | Subtotal | | $402,000 |
| | | | |
| | **Balance Remaining** | | **$498,000** |

**Total Additional Liquidity Cushion    $822,000**

a.  First Installment Loan ($1,200,000.00) – wired into escrow on July 7, 2015:

  i.   the loan proceeds will bring current the arrears owing to Wells Fargo, all past due payments and fees paid in full – approximately $430,000 outstanding; and

  ii.  The Debtor will pay two (2) months of interest-only debt service payments to Wells Fargo – approximately $27,000.00 monthly.

  iii. the loan proceeds will pay and reinstate the junior loan with Saxe by paying Saxe all past due payments and fees – approximately $260,000 outstanding, based on Saxe's response to a reinstatement request from the Debtor, and

  iv.  The Debtor will pay two (2) months of interest-only debt service to Saxe – approximately $17,000 monthly.

  v.   The Debtor will pay two (2) months of interest-only debt service to Dakota Note– approximately $16,000 monthly.

  vi.  Approximate Remaining Loan Balance after Payments: $324,000.00

b. Second Installment Loan ($900,000.00

      i. The Debtor will pay an additional 10 months of debt service to Wells Fargo – approximately $27,000.00 monthly (for a total of 12 months)

      ii. The Debtor will pay four (4) months of interest-only debt service to Saxe – approximately $17,000 monthly (for a total of 6 months)

      iii. The Debtor will pay four (4) months of interest-only debt service to Dakota Note– approximately $16,000 monthly (for a total of 6 months).

      iv. Approximate Remaining Loan Balance after Payments: $822,000.00.

c. Total Additional Liquidity Cushion (After Payments from Each Installment are Made):  $822,000.00

7.     As identified in both the above table and Good Faith Estimate of Closing Costs in Exhibit B, I reasonably anticipate that I will have between $224,000 and $247,938.33 after closing of the first installment of $1,200,000.00.

8.     From said remaining funds, I intend to immediately pay the unsecured creditors of the estate the amounts they are owed, as follows.

9.     I agree to pay Mr. Erik Babock the amount listed on the Amended Schedule F, to wit, $15,000 (no changer).

10.     I agree to pay Ms. Priscilla Harley the amount listed on the Amended Schedule F, to wit $1,000 (listed on the original Schedule F at $10,000).

11.     The $10,000 amount originally listed as owed to Ms. Harley for pre-petition work was incorrect and represented a typographical error. Said figure should be $1,000.

12.     The monthly operating reports that I have filed correctly indicated the total pre-petition general unsecured creditor level at $16,000, i.e. $15,000 to Mr. Babock and $1,000 owed to Ms. Harley.

Case No. 14-31867 DM 11, *In re Brugnara Properties VI*
SECOND SUPPLEMENTAL DECLARATION OF KATHERINE BRUGNARA
IN SUPPORT OF MOTION TO DISMISS CASE

13.    Additionally, I agree to pay Mr. Matthew Metzger, who has served as chapter 11 counsel for Brugnara Properties, VI, the total figure of $15,596.03, which figure represents total fees of $15,481.53 and $114.50 for the period March 30, 2015 through June 26, 2015 (the "Fee Application Figures")

14.    I have had a chance to review Mr. Metzger's Fee Application and I have no objection to the Fee Application Figures.

15.    Additionally, the Court requested that Mr. Metzger provide me with an update on fees and expense incurred through the present period, i.e. through an including July 16, 2015.

16.    On July 16, 2015, Mr. Metzger produced to me the updated figure through and including July 16, 2015

17.    Said figure represents total fees of $25,443.15 and total expenses of $115.48 – for a total revised figure of $25,558.63 – an increase of approximately $9,962.60 for the period of June 27, 2015 through and including July 16, 2015 (the "Updated Fee Figures").

18.    I cannot agree to the Updated Fee Figures without first having had the opportunity to review the Updated Fee Figures.

19.    Thus, at the present time, I agree only to pay Mr. Metzger the amount of $15,596.03.

20.    I agree to pay all general unsecured creditors of the estate the amounts listed above by before July 31, 2015, i.e. as soon as the Bankruptcy Case is dismissed and I receive from the remaining cash at the closing of the loan.

21.    As demonstrated by the above table, from the loan proceeds, I will have sufficient remaining funds after closing of the loan to make the above three (3) creditors whole, as said payments will total $31,596.03 and I will have well in excess of $200,000 available.

22.    The Debtor has at least $13,000,000 of verified equity in the Subject Property and will be severely prejudiced if it is denied the opportunity to close said private money loan with Dakota Note, LLC.

23. The funding of said loan outside of bankruptcy will substantially benefit Saxe and Wells Fargo by bringing both loans current.

24. By contrast, if the case were not dismissed and the Debtor were not allowed access to the loan proceeds, the Debtor will suffer immediate and irreparable harm by loss of the Subject Property to the perfection of a non-judicial foreclosure action by Saxe.

25. For the past 15 years, the Subject Property always has been a non-income producing property, including but not limited to the time when Saxe agreed to perform due diligence and ultimately lend on the Subject Property as a straight equity-based loan.

26. Additionally, I note that Saxe did receive twelve months of interest pre-payments on its junior loan at the time that Saxe agreed to the loan agreement.

27. In the last 10 years, I also note that the Debtor has already paid in full two (2) junior loans on the Subject Property, each worth FIVE-MILLION dollars ($5,000,000), behind the current first mortgage held by Wells Fargo.

**Payment of Fees Owed to Office of the United States Trustee**

28. At the July 15, 2015 hearing, the Office of the United States Trustee notified me: 1) that the fee of $325 from for the quarter ending March 31, 2015 was outstanding; and 2) that the fee of $325 for the quarter ending June 30, 2015 would be due by July 30, 2015.

29. On July 3, 2015, I mailed to the Office of the United States Trustee a check in the amount of $325 for the quarter ending March 31, 2015.

30. At the July 15, 2015 hearing, I learned that said check had not been received.

31. In the event that the Office of the United States Trustee cannot confirm receipt of said check by the July 17, 2015 hearing, I agree to re-issue said check in the amount of $325 to the Office of the United States Trustee by or before July 31, 2015.

32. Additionally, I agree to provide payment of a second check of $325 for the quarter ending June 30, 2015 to the Office of the United States Trustee by or before July 31, 2015.

**Continuation of Efforts to Sell or Refinance Subject Property**

Case No. 14-31867 DM 11, *In re Brugnara Properties VI*
SECOND SUPPLEMENTAL DECLARATION OF KATHERINE BRUGNARA
IN SUPPORT OF MOTION TO DISMISS CASE

Case: 14-31867    Doc# 85    Filed: 07/16/15    Entered: 07/16/15 23:56:54    Page 6 of 24

33.     At the July 15, 2015 hearing, the Court also required that I specify my intent regarding treatment of the real property commonly known as 224 Sea Cliff Ave, San Francisco, CA 94121 (the "Subject Property").

34.     I will continue to comply with all terms and conditions of the three (3) promissory note and related deeds of trust secured against the Subject Property.

35.     As is well known, the estate employed a broker, Mr. Shaban Shakoori of Coldwell Banker to assist with my efforts to sell the Subject Property.  *See* ECF/Docket No. 46.

36.     Following dismissal, I will be able to continue my efforts find the right buyer at market price, as soon as the case is dismissed.

37.     Notwithstanding the above, Brugnara Properties, VI also will continue to pursue its refinance options to pay its secured lenders.

38.     On behalf of Brugnara Properties, VI, I have identified several parties interested in refinancing the Subject Property outside of Bankruptcy Court.

39.     Said refinancing would pay off the existing lenders.

40.     Brugnara Properties, VI will suffer irreparable harm if the Court does not grant the Debtor's Motion to Dismiss Case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 16th day of July, 2015 at San Francisco, California.

/s/ _____
Katherine Brugnara
President
Brugnara Properties VI

-7-

Case No. 14-31867 DM 11, *In re Brugnara Properties VI*
SECOND SUPPLEMENTAL DECLARATION OF KATHERINE BRUGNARA
IN SUPPORT OF MOTION TO DISMISS CASE

# EXHIBIT A

# NOTE SECURED BY A DEED OF TRUST

Loan Number: ███37          Date: 07/01/2015

San Jose, California

<u>224 Sea Cliff Avenue, San Francisco, CA 94121</u>
Property Address

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$1,200,000.00** (this amount will be called "principal"), plus interest, to the order of **Dakota Note, LLC, as to an undivided 1,000,000/1,200,000 interest and Silicon Valley Funding Group, Inc. as to an undivided 200,000/1,200,000 interest** (who will be called "Lender"). I understand that the Lender may transfer this Note. The Lender or anyone else who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder(s)."

## 2. INTEREST

I will pay interest at a yearly rate as described in paragraph 3 below.

Interest commences on **07/08/2015**, and, if paragraph 3 reflects more than one interest rate during the loan term, the rate will change on the date which is one (1) calendar month before each Payment Start Date.

Interest will be charged on unpaid principal until the full amount of principal has been paid.

I also agree to pay interest at the rate described in paragraph 3 below on the prepaid finance charges which are a part of the principal.

## 3. PAYMENTS

My payments are  ☑ Interest Only   ☐ Fully Amortized   ☐ Other

I will make my payments each month as follows:

| Number of Payments | Payment Start Dates | Interest Rates | Payment Amounts |
|---|---|---|---|
| 5 | Monthly beginning August 10, 2015 | 16.00% | $16,000.00 |
| 1 | January 10, 2016 | 16.00% | $1,216,000.00 |

I will make these payments until I have paid all of the principal and interest and any other charges that I may owe under this Note. If on **01/10/2016** (the Due Date) I still owe amounts under this Note (balloon balance), I will pay all those amounts, in full, on that date.

I will make my payments payable to **Dakota Note, 110 East Center St., Ste. 567, Madison, SD 92809-0112**, or at a different place if I am notified by the Note Holder or the Agent for the Note Holder.

## 4. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge For Overdue Payments.** If I do not pay the full amount of each monthly payment by the end of **10** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **10.000%** of my overdue payment or U.S. **$5.00**, whichever is more. I will pay this late charge only once on any late payment.

In the event a balloon payment is delinquent more than **60** days after the date it is due, I agree to pay a late charge in an amount equal to the maximum late charge that could have been assessed with respect to the largest single monthly installment previously due, other than the balloon payment, multiplied by the sum of one plus the number of months occurring since the late payment charge began to accrue.

**(B) Default.** If I do not pay the full amount of each monthly payment due under this Note by the date stated in paragraph 3 above, I will be in default, and the Note Holder may demand that I pay immediately all amounts that I owe under this Note.

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(C) Payment of Note Holder's Costs and Expenses.** If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees. A default upon any interest of any Note Holder shall be a default upon all interests.

## 5. BORROWER'S PAYMENTS BEFORE THEY ARE DUE - PREPAYMENT PENALTIES

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as "prepayment." If I pay all or part of the loan principal before it is due, whether such payment is made voluntarily or involuntarily, I agree to pay a prepayment penalty computed as follows: **Lender is entitled to earn 3 months interest. No prepayment after 3 monthly payments are made.**

Case: 14-31867   Doc# 85   Filed: 07/16/15   Entered: 07/16/15 23:56:54   Page 9 of 24

## 6. BORROWER'S WAIVERS

I waive my rights to require the Note Holder to do certain things. Those things are: (a) to demand payment of amounts due (known as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); (c) to obtain an official certification of nonpayment (known as "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else, also waives these rights. These persons are known as "guarantors, sureties and endorsers."

## 7. RESPONSIBILITIES OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each of us is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of the guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that anyone of us may be required to pay all of the amounts owed under this Note.

## 8. THIS NOTE IS SECURED BY A DEED OF TRUST

In addition to the protection given to the Note Holder under this Note, a Deed of Trust (the "Security Instrument") with a Due-on-Transfer Clause dated the same date of this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in the Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

Some of those conditions are described as follows:

"Lender's Right to Require The Loan to be Paid Off Immediately. If the borrower shall sell, enter into a contract of sale, lease for a term of more than 6-years (including options to renew), lease with an option to purchase for any term, or transfer all or any part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) or a transfer by devise, descent, or by operation of law upon the death of a joint tenant, the Lender may, at its option declare the Note and any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable, in full. No waiver of the Lender's right to accelerate shall be effective unless it is in writing."

## 9. ADVANCING FEE
**ADVANCING FEE CHARGED TO BORROWER, WHEN LENDER MUST CURE DELINQUENT SENIOR LOANS, TAXES, INSURANCE, AND/OR HOMEOWNER ASSOCIATION DUES.**

In the event that the Lender, makes any advances for reinstating delinquent prior encumbrances, taxes, insurance, homeowner association dues (if applicable) or for the preservation of this security, to protect the BENEFICIARY'S INTEREST in this Note, THERE WILL BE AN ADVANCING FEE EQUAL TO THREE PERCENT (3%) OF THE AMOUNT SO ADVANCED SUBJECT TO MINIMUM FEE OF FIFTY DOLLARS ($50.00). Furthermore, such advances are to be secured by this Deed of Trust and Bear Interest at the same rate that is charged on the PRINCIPAL of this Note, from the date of advance to such date when all monies are paid in full in the form of certified funds, cashier's and money order.

## 10. DEFAULT INTEREST

Should Borrower default on any terms and conditions of this loan, Borrower shall pay a default interest rate in the amount of 3.00% per annum, in addition to the current rate under the Note, based on the principal balance and on all outstanding advances and advances to be made after default has occurred. Default interest shall commence as of the date of the default and shall continue until such time default has been cured or loan has been paid off.

## 11. THE FOLLOWING PROVISIONS MAY RESULT IN THE COMPOUNDING OF INTEREST ON YOUR LOAN

At the option of the Beneficiary, if any payment should be insufficient to pay the interest then due, the balance of interest remaining shall be added to the principal and will bear interest at the Note rate as the principal.

At the option of the Beneficiary, if any principal and/or interest installments, late charges, advances and/or costs should be repaid through or by any forbearance, bankruptcy plan or similar repayment plan, the total sum of these amounts will bear interest at the Note rate from the date due or advanced until the date repaid.

## 12. RIGHT TO ASSIGN

The holder of this Note shall have the right to sell, assign, or otherwise transfer, either in part or in its entirety, this Note, the Deed of Trust, and other instruments evidencing or securing indebtedness of this Note to one or more investors without Borrower's consent.

Case: 14-31867    Doc# 85    Filed: 07/16/15    Entered: 07/16/15 23:56:54    Page 10 of 24

### 13. BINDING
This Note and all of the covenants, promises and agreements contained in it shall be binding on and insure to the benefit of the respective legal and personal representatives, devisees, heirs, successors, and assigns of the Borrower and the Beneficiary.

### 14. BANKRUPTCY REORGANIZATION
For the purpose of any reorganization plan under the United States Bankruptcy Code, including, without limitation, Chapter 11 and Chapter 13 thereof and Code Sections 1123 and 1322 of said Chapters, any cure contemplated by said plan shall require the full payment of accrued and unpaid interest at the default rate (if applicable) as set forth herein and payments of any other sums due by reason of Borrower's default. Arrears accumulated and unpaid shall accrue interest at the same rate applicable to the Principal during the life of the plan, all payments toward arrearages under such reorganization plan shall be applied first to the interest accruing on the arrearages and then to the arrearage balance.

### 15. COMMERCIAL PURPOSE

Borrower represents and warrants to the Lender that the loan proceeds disbursed by the Lender under the Note shall be used for business or commercial purposes and that none of the proceeds of this Note shall be used by the Borrower for personal, family or household purposes. Borrower acknowledges that if not for this representation and warranty, Lender would not grant the loan to the Borrower on the terms represented in the Note, the Security Instrument and the Loan Documents. Borrower further acknowledges that Lender is relying exclusively on Borrower's representation and warranty hereunder in Lender's determination of the use of loan proceeds, and will make disbursements under the Note in material reliance on such representation and warranty. Lender's use of, and Borrower's execution of, the Uniform Residential Loan Application, is not intended to be inconsistent with the commercial purposes of the loan.

Brugnara Properties VI, a California Corporation

| | | |
|---|---|---|
| _Kay Brugnara_ | | |
| Borrower    Kay Brugnara President | Date | Borrower                 Date |

---

## ASSIGNMENT OF NOTE
## SECURED BY A DEED OF TRUST

Date: _____

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to:


all beneficial interest under the within Note, without recourse, and Deed of Trust securing same

_____      _____

_____      _____

---

**DO NOT DESTROY THIS NOTE:** When paid it must be surrendered to the Trustee, together with the Deed of Trust securing same for cancellation, before reconveyance will be made.

Applied Business Software, Inc. (800) 833-3343
Note Secured by Deed of Trust

Case: 14-31867   Doc# 85   Filed: 07/16/15   Entered: 07/16/15 23:56:54   Page 11 of 24

# Addendum

RE:   Brugnara Properties VI, a California Corporation          7/6/2015
      Kay Brugnara, President
      224 Sea Cliff Avenue, San Francisco, CA  94121

1. The borrower understands this $1.2 Mil 3rd loan is a short-term solution to stop the foreclosure sale schedule for July 27, 2015 by bringing the 1st and 2nd loans current and to be dismissed from the Chapter 11 Bankruptcy.  The borrower shall continue the efforts to sell the property.

2. The borrower understands the lender will rewrite this $1.2 Mil loan to be a new 3rd loan of $2.1 Mil within 60 days of the original $1.2 Mil close of escrow.

3. In the new loan – proceeds will be used as follows:

   a. 7 points will be charged on only the additional $900K.
   b. Plus document fee, title and escrow fees, plus any property taxes due.
   c. An additional 4 months interest on the 3rd (for a total of 6 months).
   d. Additional 4 months interest on the 2nd loan (for a total of 6 months).
   e. Additional 10 months on the 1st loan (for a total of 12 months).
   f. An additional $50K, 30 days after the COE, will be dispersed to the borrower if progress has been made in preparation of the property for sale. This progress to be determined at the sole discretion of the lender.
   g. If, at the end of 90 days from the close of this new $2.1 loan, the lender will release the balance of approximately $275K (subject to exact net) to borrower provided the borrower has 100% vacated the property.  As all parties agree, the house will be sold quicker and at a potentially higher price if it is vacant.
   h. If not, lender has sole discretion on the distribution of said funds.  Said funds will be used to pay senior debt.


_____          ____7/6/15____
Kay Brugnara, President                  Date

Recording Requested By
Keith Charles Knapp

When Recorded Mail To
Dakota Note
110 East Center St., Ste 567
Madison, SD 92809-0112

Title Order No.

Space above this line for recorder's use

# DEED OF TRUST

RECORDER: INDEX FOR SPECIAL NOTICE

Loan No. ▮37

This Deed of Trust, made this 1st day of July 2015, among the Trustor, **Brugnara Properties VI, a California Corporation** (herein "Borrower"), **Old Republic Title Company** (herein "Trustee"), and the Beneficiary, **Dakota Note, LLC, as to an undivided 1,000,000/1,200,000 interest and Silicon Valley Funding Group, Inc. as to an undivided 200,000/1,200,000 interest** (herein "Lender").

The beneficiaries (or assignees) of this deed of trust have agreed in writing to be governed by the desires of the holders of more than 50% of the record beneficial interest therein with respect to actions to be taken on behalf of all holders in the event of default or foreclosure or for matters that require direction or approval of the holders, including designation of the broker, servicing agent, or other person acting on their behalf, and the sale, encumbrance or lease of real property owned by the holders resulting from foreclosure or receipt of a deed in lieu of foreclosure.

## GRANT IN TRUST

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants, transfers, conveys and assigns to Trustee, in trust, with power of sale, the following described property located in the county of San Francisco, State of California: **Beginning at a point on the Northerly line of Seacliff Avenue, distant thereon 74.302 feet Westerly from the Southwesterly corner of Lot No. 76 of Subdivision No. 1 of Sea Cliff in the City and County of San Francisco, State of California, according to Map thereof recorded April 1, 1913, in Book "G" of Maps, Page 98 and 99, in the Office of the Recorder of the City and County of San Francisco, State of California; running thence Westerly along the said line of Seacliff Avenue 54.493 feet; thence North 3 degrees 23' West 132.071 feet; thence North 88 degrees East 29.011 feet; thence North 4 degrees 30' 29" East 42.240 feet to a line of ordinary high tide of the waters of the Pacific Ocean; thence North 64 degrees 48' 40" East along said line of ordinary high tide 21.122 feet; thence South 3 degrees 23' East 178.127 feet to the point of the beginning.**
Assessors' Lot 001S, Block 1307, which has the address of 224 Sea Cliff Avenue, San Francisco, CA 94121 (herein "Property Address");

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), royalties, mineral, oil and gas rights and profits, water, and water rights, and water stock, and all fixtures now or hereafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are herein referred to as the "Property";

## THIS DEED OF TRUST IS MADE TO SECURE TO LENDER:

(a) the repayment of the indebtedness evidenced by Borrower's note (herein "Note") dated **07/01/2015**, in the principal sum of U.S. **$1,200,000.00**, with payment of interest thereon, the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; the performance of the covenants and agreements of Borrower herein contained; and (b) repayment of any future advances, with interest thereon, made to the Borrower by Lender pursuant to paragraph 19 hereof (herein "Future Advances"); and in addition (c) this Deed of Trust shall provide the same security on behalf of the Lender, to cover extensions, modifications or renewals, including without limitation, extensions, modifications or renewals of the Note at a different rate of interest; and the performance of the covenants and agreements of Borrower herein contained.

Case: 14-31867   Doc# 85   Filed: 07/16/15   Entered: 07/16/15 23:56:54   Page 13 of 24

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, that the Property is unencumbered except for encumbrances of record, and that Borrower will warrant and defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. BORROWER AND LENDER COVENANT AND AGREE AS FOLLOWS:

**1. Payments of Principal and/or Interest.** Borrower shall promptly pay, when due, the principal of and/or interest on the indebtedness evidenced by the Note, prepayment and late charges as provided in the Note, and the principal of and/or interest on any Future Advances secured by the Deed of Trust.

**2. Funds for Taxes and Insurance (Impounds).** Subject to applicable law, and if required by the Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional Lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such an agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under Paragraph 18 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, if applicable, then to interest payable on the Note, then to the principal of the Note, and then to interest and principal on any Future Advances.

**4. Prior Mortgages and Deeds of Trust; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid, at least 10 days before delinquency, all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower agrees to provide, maintain and deliver to Lender fire insurance satisfactory and with loss payable to Lender. The amount collected under any fire or other insurance policy may be applied by Lender upon any indebtedness secured hereby and in such order as Lender may determine, or at option of Lender the entire amount so collected or any part thereof may be released to the Borrower. Such application or release shall not cure or waive any Default or Notice of Default hereunder or invalidate any act done pursuant to such notice.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of a loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and

Case: 14-31867   Doc# 85   Filed: 07/16/15   Entered: 07/16/15 23:56:54   Page 14 of 24

apply their insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

If Borrower obtains earthquake, flood or any other hazard insurance, or any other insurance on the Property, and such insurance is not specifically required by the Lender, then such insurance shall: (i) name the Lender as loss payee thereunder, and (ii) be subject to all of the provisions of this paragraph 5.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration of covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which affects Lender's interest in the Property, including but not limited to proceedings by the Lender to obtain relief from stay in any bankruptcy proceeding which would prohibit Lender enforcing its rights under the Deed of Trust, then Lender, at Lender's option, may make such appearances, disburse such sums, including reasonable attorney's fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, including but not limited to payment of delinquent taxes and assessments, insurance premiums due, and disbursed amounts owed to prior lien holders, shall become additional indebtedness of Borrower secured by this Deed of Trust . Such amounts as are disbursed by Lender shall be payable, upon notice from Lender to Borrower requesting payment thereof, and shall bear interest from the date of disbursement at the rate payable on the Note. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspection of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefore related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in conjunction with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

**10. Borrower Not Released.** At any time or from time to time, without liability therefore and without notice upon written request of Lender and presentation of this Deed and said Note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge thereof. Trustee may, but shall be under no obligation or duty to, appear in or defend any action or proceeding purporting to affect said property or the title thereto, or purporting to affect the security hereof or the rights or powers of Lender or Trustee.

**11. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. The procurement of insurance or the payment of taxes or other liens or charges by Lender shall not be a waiver of Lender's right to accelerate the maturity of the indebtedness secured by this Deed of Trust.

**12. Remedies Cumulative.** All remedies provided in this Deed of Trust are distinct and cumulative to any other or remedy under this Deed of Trust or afforded by law or equity, and may be exercised concurrently, independently or successively.

**13. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 18 hereof. All covenants and agreements of Borrower shall be joint and several.

**14. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower or the Property at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender, in care of Lender's Servicing Agent ("Agent"), **Dakota Note, 110 East Center St., Ste. 567, Madison, SD 92809-0112** or to such other address as Lender or Agent may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**15. This Deed of Trust shall be governed by the Laws of the State of California.** In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not effect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of the Deed of Trust are declared to be severable.

**16. Lender's Right to Require The Loan to be Paid Off Immediately.** If the Borrower shall sell, enter into a contract of sale, lease for a term of more than 6-years (including options to renew), lease with an option to purchase for any term, or transfer all or any

Case: 14-31867    Doc# 85    Filed: 07/16/15    Entered: 07/16/15 23:56:54    Page 15 of 24

part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) or a transfer by devise, descent, or by operation of law upon the death of a joint tenant, the Lender may, at its option declare the Note and any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable, in full. No waiver or the Lender's right to accelerate shall be effective unless it is in writing.

If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 14 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 17 hereof.

BORROWER AND LENDER FURTHER COVENANT AND AGREE AS FOLLOWS:

**17. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, and without regard to the adequacy of any security for the indebtedness hereby secured, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 18 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 18 hereof or abandonment of the Property, Lender, in person, by Agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorney's fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

**18. Default.** Upon default by Borrower in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Lender may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written Notice of Default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Trustee shall be entitled to rely upon the correctness of such notice. Lender also shall deposit with Trustee this Deed, said Note and all documents evidencing expenditures secured hereby.

After the lapse of such time as then may be required by law following the recordation of said Notice of Default and Notice of Sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said Notice of Sale, either as a whole or in separate parcels and in such order as it may determine (but subject to any statutory right of Trustor to direct the order in which said property, if consisting of several lots or parcels, shall be sold), at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property to sold, but without any covenant or warranty, expressed or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of; all sums expended under the terms hereof, not then repaid, with accrued interest at the rate prescribed in the Note; all other sums then secured thereby; and the remainder, if any, to the person or persons legally entitled thereto.

**19. Future Advances.** Upon request of Borrower, Lender, at Lender's option prior to full reconveyance of the Property by Trustee to Borrower, may make Future Advances to Borrower. Such advances with interest thereon, shall be secured by this Deed of Trust when evidenced by promissory notes stating that said notes are secured hereby.

**20. Reconveyance.** Upon written request of Lender stating that all sums secured hereby have been paid, and upon surrender of this Deed and said Note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." The Trustee may destroy said Note, this Deed or Trust (and any other documents related thereto) upon the first to occur of the following: 5 years after issuance of a full reconveyance; or, recordation of the Note and Deed of Trust in a form or medium which permits their reproduction for 5 years following issuance of a full reconveyance.

**21. Substitution of Trustee.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

**22. Request for Notices.** Borrower requests that copies of the notice of sale and notice of default be sent to Borrower's address which is the Property Address.

**23. Statement of Obligation.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligations as provided by Section 2943 of the Civil Code of California.

MISCELLANEOUS PROVISIONS

Applied Business Software, Inc. (800) 833-3343
Deed of Trust

Case: 14-31867    Doc# 85    Filed: 07/16/15    Entered: 07/16/15 23:56:54    Page 16 of 24

**24. Construction or Home Improvement Loan.** If the loan secured by this Deed of Trust is a construction or home improvement loan, Borrower is required to perform according to the terms and conditions of each agreement contained in any building, home improvement or similar agreement between the Borrower and Lender.

**25. Acceptance by Lender of a Partial Payment After Notice of Default.** By accepting partial payment (payments which do not satisfy a default or delinquency in full) of any sums secured by this Deed of Trust after a Notice of Default has been recorded, or by accepting late performance of any obligation secured by this Deed of Trust, or by adding any payment so made to the loan secured by this Deed of Trust, whether or not such payments are made pursuant to a court order, the Lender does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure to make any such prompt payment or to perform any such act. No exercise of any right or remedy of the Lender or Trustee under this Deed of Trust shall constitute a waiver of any other right or remedy contained in this Deed of Trust or provided by law.

<u>**REQUEST FOR SPECIAL NOTICE OF DEFAULT AND FORECLOSURE**</u>
<u>**UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST**</u>

In accordance with Section 2924b of the Civil Code, Request is hereby made by the undersigned Trustor that a copy of any default and a copy of any notice of sale under deed of trust recorded in Book _____, Page(s) _____, Instrument No._____, Official Records of County Recorder of _____ County, California. The original Trustor _____ and the original Trustee _____ and the original Beneficiary _____
Mail to: _____

IN WITNESS WHEREOF, BORROWER HAS EXECUTED THIS DEED OF TRUST

Brugnara Properties VI, a California Corporation

_____  7/6/15  _____
Borrower   Kay Brugnara, President    Date          Borrower                    Date

---

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
| --- |

State of California
County of ____San Francisco____

On __July 6, 2015__ before me, __N. J. Shanta, Notary Public__,
personally appeared _____
____Kay Brugnara____

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature

N. J. SHANTA
COMM. # 2073931
NOTARY PUBLIC • CALIFORNIA
SAN FRANCISCO COUNTY
Comm. Exp. AUG 6, 2018

---

Case: 14-31867   Doc# 85   Filed: 07/16/15   Entered: 07/16/15 23:56:54   Page 17 of 24

The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

| | |
|---|---|
| Signature of Beneficiary (the "LENDER")        Date | Signature of Beneficiary (the "LENDER")        Date |

When recorded, mail to

Att: _____

# EXHIBIT B

# MORTGAGE LOAN DISCLOSURE STATEMENT/GOOD FAITH ESTIMATE

## NONTRADITIONAL MORTGAGE PRODUCT (ONE TO FOUR RESIDENTIAL UNITS)

RE 885 (REV. 8/08)

Borrower's Name(s): **Brugnara Properties VI, a California Corporation**

Real Property Collateral: The intended security for this proposed loan will be a Deed of Trust on (street address or legal description): **224 Sea Cliff Avenue, San Francisco, CA 94121**

This joint Mortgage Loan Disclosure Statement/Good Faith Estimate is being provided by Keith C Knapp, a real estate broker acting as a mortgage broker, pursuant to the Federal Real Estate Settlement Procedures Act (RESPA) and similar California law. In a transaction subject to RESPA, a lender will provide you with an additional Good Faith Estimate within three business days of the receipt of your loan application. You will also be informed of material changes before settlement/close of escrow. The name of the intended lender to whom your loan application will be delivered is:

☐ Unknown     ☑    Dakota Note, LLC, et. al. (Name of lender, if known)

### GOOD FAITH ESTIMATE OF CLOSING COSTS

The information provided below reflects estimates of the charges you are likely to incur at the settlement of your loan. The fees, commissions, costs and expenses listed are estimates; the actual charges may be more or less. Your transaction may not involve a charge for every item listed and any additional items charged will be listed. The numbers listed beside the estimate generally correspond to the numbered lines contained in the HUD-1 Settlement Statement which you will receive at settlement if this transaction is subject to RESPA. The HUD-1 Settlement Statement contains the actual costs for the items paid at settlement. When this transaction is subject to RESPA, by signing page two of this form you are also acknowledging receipt of the HUD Guide to Settlement Costs.

| HUD-1 | Item | | Paid to Others | Paid to Broker |
|---|---|---|---|---|
| 800 | *Items Payable in Connection with Loan* | | | |
| 801 | Lender's Loan Origination Fee | | | |
| 802 | Lender's Loan Discount Fee | | | |
| 803 | Appraisal Fee | | | |
| 804 | Bring 1ˢᵗ Loan Current | | $430,000.00 | |
| 805 | Bring 2ⁿᵈ Loan Current | | $230,000.00 | |
| 808 | Mortgage Broker Commission/Fee | | | $114,000.00 |
| 809 | Tax Service Fee | | | |
| 810 | Processing Fee | | | $995.00 |
| 811 | Underwriting Fee | | | |
| 812 | Wire Transfer Fees | | $50.00 | |
| 813 | | | | |
| 900 | *Items Required by Lender to be Paid in Advance* | | | |
| 901 | Interest for 2 days at $533.33 per day | | $1,066.67 | |
| 902 | Mortgage Insurance Premiums | | | |
| 903 | Hazard Insurance Premiums | | | |
| 904 | County Property Taxes (1ˢᵗ Installment of 2015-2016) | | $49,000.00 | |
| 905 | VA Funding Fee | | | |
| 906 | Prepaid Payments | | $0.00 | |
| 1000 | *Reserves Deposited with Lender* | | | |
| 1001 | Hazard Insurance: | _ months at _ /month | $0.00 | |
| 1002 | Mortgage Payments: _ | 2 months at $61,000.00 /month | $122,000.00 | |
| 1004 | Co. Property Taxes: _ | months at _ /month | $0.00 | |
| 1005 | | | | |
| 1100 | *Title Charges* | | | |
| 1101 | Settlement or Closing/Escrow Fee | | $3,000.00 | |
| 1105 | Document Preparation Fee | | | $750.00 |
| 1106 | Notary Fee | | $100.00 | |
| 1108 | Title Insurance | | $1,000.00 | |
| 1109 | Lender's coverage | | | |
| 1200 | *Government Recording and Transfer Charges* | | | |
| 1201 | Recording Fees | | $100.00 | |
| 1202 | City/County Tax/Stamps | | | |
| 1203 | State tax/stamps | | | |
| 1300 | *Additional Settlement Charges* | | | |
| 1302 | Pest Inspection | | | |
| 1303 | Beneficiary statement fees | | | |

| | Paid to Others | Paid to Broker |
|---|---|---|
| Subtotal of Initial Fees, Commissions, Costs and Expenses: | $836,316.67 | $115,745.00 |
| Total of Initial Fees, Commissions, Costs and Expenses | | $952,061.67 |

Compensation to Broker (Not Paid Out of Loan Proceeds):

| | | | |
|---|---|---|---|
| Mortgage Broker Commission/Fee | | $ | |
| Any Additional Compensation from Lender | ☑ No ☐ Yes | $ | |
| (Approximate Yield Spread Premium or Other Rebate) | | | |

# ADDITIONAL REQUIRED CALIFORNIA DISCLOSURES

I. Proposed Loan Amount:                                **$1,200,000.00**

    Initial Commissions, Fees, Costs & Expenses Summarized on Page 1        **$952,061.67**

    Payment of Other Obligations (List):

        Credit Life and/or Disability Insurance (see V below)        **$0.00**

        Discharge of existing liens        **$0.00**

    **Subtotals of All Deductions:**                                    **$952,061.67**

    **Estimated Cash at Closing**      ☑ To You    ☐ That you must pay        **$247,938.33**

II. Proposed Loan Term:  <u>6</u>  ☐ Years   ☑ Months

III. Proposed Interest Rate: **16.000%**    ☑Fixed Rate      ☐Initial Adjustable Rate

    If the Fixed Rate Box is checked in Section III immediately above, proceed to section X. Do not complete sections IV through IX.

IV. Initial Adjustable Rate in effect for <u>N/A</u> Months

V. Fully Indexed Interest Rate <u>N/A</u> %

VI. Maximum Interest Rate <u>N/A</u> %

VII. Proposed Initial (Minimum) Loan Payment $__<u>N/A</u>__ Monthly

VIII. Interest Rate can Increase <u>N/A</u> % each <u>N/A</u> Months

IX. Payment Options end after <u>N/A</u> Months or <u>N/A</u> % of Original Balance, whichever comes first.

X. After <u>N/A</u> months you will not have the option to make minimum or interest only payments and negative amortization (increases in your principal balance), if any, will no longer be allowed. Assuming you have made minimum payments, you may then have to make principal and interest payments of <u>N/A</u> at the maximum interest rate in effect for the remaining <u>N/A</u> months of the loan. *These payments will be significantly higher than the minimum or interest only payments.*

XI. If your loan contains negative amortization, at the time no additional negative amortization will accrue, your loan balance will be <u>N/A</u> assuming minimum payments are made.

XII. The loan is subject to a balloon payment: ☐ No ☑ Yes. If Yes, the following paragraph applies and a final balloon payment of **$1,216,000.00** will be due on <u>1/10/2016</u> *[estimated date (day/month/year)]*

    **NOTICE TO BORROWER: IF YOU DO NOT HAVE THE FUNDS TO PAY THE BALLOON PAYMENT WHEN IT COMES DUE, YOU MAY HAVE TO OBTAIN A NEW LOAN AGAINST YOUR PROPERTY TO MAKE THE BALLOON PAYMENT. IN THAT CASE, YOU MAY AGAIN HAVE TO PAY COMMISSIONS, FEES AND EXPENSES FOR THE ARRANGING OF THE NEW LOAN. IN ADDITION, IF YOU ARE UNABLE TO MAKE THE MONTHLY PAYMENTS OR THE BALLOON PAYMENT, YOU MAY LOSE THE PROPERTY AND ALL OF YOUR EQUITY THROUGH FORECLOSURE. KEEP THIS IN MIND IN DECIDING UPON THE AMOUNT AND TERMS OF THIS LOAN.**

XIII. Prepayments: The proposed loan has the following prepayment provisions:

    ☐ No prepayment penalty (you will not be charged a penalty to pay off or refinance the loan before maturity)

    ☐ You will have to pay a prepayment penalty if the loan is paid off or refinanced in the first <u>0.3</u> years. The prepayment penalty could be as much as $48,000.00. Any prepayment of principal in excess of 20% of the

        ☐ original loan balance or

        ☐ unpaid balance

    for the first <u>0.3</u> years will include a penalty not to exceed months interest at the note interest rate but not more than the interest you would be charged if the loan were paid to maturity.

    ☑ Other – you will have to pay a prepayment penalty if the loan is paid off or refinanced in the first 3 months as follows:

    <u>Lender is entitled to earn 3 months interest. No prepayment after 3 monthly payments are made.</u>

XIV. Taxes and Insurance:

    ☐ There will be an impound (escrow) account which will collect approximately <u>0</u> a month in addition to your principal and interest payments for the payment of ☐ county property taxes* ☐ hazard insurance ☐ mortgage insurance ☐ flood insurance ☐ other .

    ☑ If there is no impound (escrow) account or if your escrow (impound) account does not include one or more of the payments described above, you will have to plan for the payment of ☑ county property taxes** ☑ hazard insurance ☐ mortgage insurance ☐ flood insurance ☐ other of approximately $<u>110,000.00</u> per year.

    * In a purchase transaction, county property taxes are calculated based on the sales price of the property and may require the payment of an additional (supplemental) tax bill from the county tax authority by your lender (if escrowed) or you if not escrowed.

XV. Credit Life and/or Disability Insurance: The purchase of credit life and/or disability insurance by a borrower is NOT required as a condition of making this proposed loan.

    XVI. Other Liens: Are there liens currently on this property for which the borrower is obligated? ☐No ☑Yes. If Yes, describe below:

Applied Business Software, Inc. (800) 833-3343
MLDS RE 885

9537/Brugnara
Page 2 of 5

Case: 14-31867    Doc# 85    Filed: 07/16/15    Entered: 07/16/15 23:56:54    Page 21 of 24

| Lienholder's Name | Amount Owing | Priority |
|---|---|---|
| Wells Fargo | $6,099,000.00 | 1st |
| Saxe Mortgage | $1,700,000.00 | 2nd |
| | | |
| | | |

Liens that will remain or are anticipated on this property after the proposed loan for which you are applying is made or arranged (including the proposed loan for which you are applying):

| Lienholder's Name | Amount Owing | Priority |
|---|---|---|
| Wells Fargo | $6,099,000.00 | 1st |
| Saxe Mortgage | $1,700,000.00 | 2nd |
| Dakota Note, LLC, et. al. | $1,200,000.00 | 3rd |
| | | |
| | | |

**NOTICE TO BORROWER:** Be sure that you state the amount of all liens as accurately as possible. If you contract with the broker to arrange this loan, but it cannot be arranged because you did not state these liens correctly, you may be liable to pay commissions, fees and expenses even though you do not obtain the loan.

XVII. Article 7 Compliance: If this proposed loan is secured by a first deed of trust in a principal amount of less than $30,000 or secured by a junior lien in a principal amount of less than $20,000, the undersigned licensee certifies that the loan will be made in compliance with Article 7 of Chapter 3 of the Real Estate Law.

  A.  This loan ☐ may ☐ will ☑ will not be made wholly or in part from broker-controlled funds as defined in Section 10241(j) of the Business and Professions Code.

  B.  If the broker indicates in the above statement that the loan "may" be made out of broker-controlled funds, the broker must inform the borrower prior to the close of escrow if the funds to be received by the borrower are in fact broker-controlled funds.

XVIII. This loan is based on limited or no documentation of your income and/or assets and may have a higher interest rate, or more points or fees than other products requiring documentation: ☐ No ☑ Yes.

**NOTICE TO BROKER**

If any of the columns in section XIX, Comparison of Sample Mortgage Features, on page 4 of this RE 885 form, are not completed, you must certify to the following:

**CERTIFICATION**

I, _____, hereby certify (or declare) that the failure to complete the information in any or all of the columns (with the exception of the last column "Proposed Loan" in the Typical Mortgage Transactions portion of this RE 885 is either because (1) after a diligent search, I have determined that the product specified in that column is not available to consumers from mortgage lenders, or (2) the borrower to whom this form applies does not qualify for that particular product.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_____             _____

         Signature of Broker                                                 Date

## TYPICAL MORTGAGE TRANSACTIONS

| | Principal and Interest<br><br>*Fully Amortizing*<br><br>☑ Not Offered* | Interest Only<br><br>*Fully Amortizing*<br><br>☑ Not Offered* | 5/1 ARM<br><br>*Fully Amortizing*<br><br>☑ Not Offered* | Interest Only<br><br>*Fully Amortizing*<br><br>☑ Not Offered* | Option Payment<br><br>*Fully Amortizing*<br><br>☑ Not Offered* | Proposed Loan<br>Type of Loan:<br>Fixed Rate<br>Type of<br>Amortization:<br>Interest Only |
|---|---|---|---|---|---|---|
| **PROPOSED LOAN AMOUNT** $1,200,000.00 **6-MONTH TERM** | Fixed Rate (%) | Fixed Rate () Interest Only for First 5 Years | Fixed Rate for First 5 Years; Adjustable Each Year After First 5 Years<br><br>(Initial rate for 1 to 5 is ; Maximum Rate is ) | Interest Only and Fixed Rate for First 5 years; Adjustable Rate Each Year After First 5 Years<br><br>(Initial rate for 1 to 5 is ; Maximum Rate is %) | Adjustable Rate for Entire Term of the Mortgage (Rate in month 1 is ; Rate in month 2 through year 5 is ; Maximum Rate is ) | Explanation of Type of Proposed Loan Product:<br>Fixed Rate Loan<br>Interest Only with a Balloon Payment |
| *Payment Scenarios* | | | | | | |
| Minimum Monthly Payment Years 1-5 except as noted | $200,000.00 ** | $0.00 | $200,000.00 | $0.00 | $200,000.00 **** (1ˢᵗ year only) | $16,000.00 |
| Monthly Payment in Year 6 with no change in rates | | *** | | | | n/a |
| Monthly Payment in Year 6 with a 2% rise in rates | | | | | | n/a |
| Minimum Monthly Payment | $200,000.00 | $0.00 | $200,000.00 | $0.00 | $200,000.00 | $16,000.00 |
| Your Gross Income | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| Difference | $-200,000.00 | $0.00 | $-200,000.00 | $0.00 | $-200,000.00 | |
| Maximum Monthly Payment in Year 6 with a 5% rise in rates | | | | | | |
| Your Gross Income | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| Difference | | | | | | |
| *Loan Balance Scenarios* | | | | | | |
| How much will be owed after 5 years? | | | | | | Will Be Paid Off |
| Has the loan balance been reduced after 5 years of payments? | Yes<br><br>The loan balance was reduced by | No<br><br>The loan balance was not reduced | Yes<br><br>The loan balance was reduced by | No<br><br>The loan balance was not reduced | No<br><br>The loan balance increased by | n/a<br>The loan balance:<br>n/a |

\*     "Not offered" indicates the broker does not offer the comparison loan product.
The information provided for the products not offered was obtained from sources deemed reliable. ☑ Yes ☐ No

\*\*     This illustrates an interest rate and payments that are fixed for life of the loan.

\*\*\*     This illustrates payments that are fixed after the first five years of the loan at a higher amount because they include both principal and interest.

\*\*\*\*     This illustrates minimum monthly payments that are based on an interest rate that is in effect during the first month only. The payments required during the first year will not be sufficient to cover all of the interest that is due when the rate increases in the second month of the loan. Any unpaid interest amount will be added to the loan balance. Minimum payments for years 2-5 are based on the higher interest rate in effect at the time, subject to any contract limits on payment increases. Minimum payments will be recast (recalculated) after 5 years, or when the loan balance reaches a certain limit, to cover both principal and interest at the applicable rate.

**IMPORTANT NOTE: Please use this chart to discuss possible loans with your broker or lender**

If a mortgage loan broker licensed by the California Department of Real Estate is acting as your agent in connection with your home loan/mortgage, the agent owes you certain fiduciary duties, and California statutory law imposes other duties.

XX.    NOTICE TO BORROWER: THIS IS NOT A LOAN COMMITMENT. Do not sign this statement until you have read and understood all of the information in it. All parts of the form must be completed before you sign. Borrower hereby acknowledges the receipt of a copy of this statement.

Keith C Knapp               00382151             Chris K Knapp              01513565
*Name of Broker*            *License #*            *Broker's Representative*        *License #*

1346 The Alameda, 7-119, San Jose, CA 95126
*Broker's Address*

                          **OR**

*Signature of Broker*           *Date*          *Signature of Representative*         *Date*

Case: 14-31867    Doc# 85    Filed: 07/16/15    Entered: 07/16/15 23:56:54    Page 23 of 24

Brugnara Properties VI, a California Corporation

_Kay Brugnara_     7/6/15

Borrower    Kay Brugnara, President      Date    Borrower                      Date

Department of Real Estate license information telephone number: (916) 227-0931, or check license status at www.dre.ca.gov

Applied Business Software, Inc. (800) 833-3343
MLDS RE 885